**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | | |
|---|---|---|
| **CAROL ROGERS** | * | **CIVIL ACTION NO. 26-1688** |
| **VERSUS** | * | **JUDGE ELDON E. FALLON** |
| **OCHSNER CLINIC FOUNDATION D/B/A OCHSNER HEALTH** | * | **MAGISTRATE JUDGE DONNA PHILLIPS CURRAULT** |

* * * * * * * *

## ORDER & REASONS

Before the Court is a Motion for Partial Dismissal pursuant to Fed. R. Civ. P. 12(b)(6) filed by Defendant Ochsner Clinic Foundation ("Ochsner"). R. Doc. 8. Plaintiff Carol Rogers ("Rogers") opposes the Motion. R. Doc. 10. Ochsner replied. R. Doc. 15. After considering the record, briefing, and applicable law, the Court rules as follows:

### I. BACKGROUND

Rogers is a sixty-six-year-old Caucasian woman employed by Ochsner as a registered nurse. R. Doc. 5 at 2. Rogers worked at two Ochsner hospitals in the greater New Orleans area from 2019 onward. *Id.* Rogers alleges that, in November 2024, Ochsner supervisors began instructing her not to appear for her regularly scheduled shifts. *Id.* at 3–4. Rogers maintains that supervisors represented that her presence was not required for these shifts, when in fact supervisors were reassigning her shifts to a nurse who was thirty years younger, inexperienced, and African American. *Id.* at 4. Rogers avers that the reassignment of her shifts continued through July 2026. *Id.* at 5. During this time, supervisors encouraged Rogers to accept fill-in "pool" shifts for nurses who were unable to work. *Id.* Rogers maintains that Ochsner operations manager Shae Cutrer celebrated the substitution of Rogers for a younger, African American employee in front of Rogers's coworkers, "for the purpose of embarrassing [Rogers], depriving her of work opportunity, harming her reputation, diminishing her work morale, and incentivizing her to

voluntarily resign." *Id.* at 6–7. Rogers avers that she suffered "emotional distress, psychiatric injury, depression . . . anxiety, stress, . . . humiliation [and] embarrassment" as the result of Ochsner's and Cutrer's actions. *Id.* at 21.

Rogers filed the instant suit against Ochsner and Cutrer alleging discrimination based on race and age in violation of federal and state antidiscrimination laws, breach of duty in violation of La. Civ. Code art. 2315, and intentional infliction of emotional distress ("IIED") in violation of art. 2315.

## II. PRESENT MOTION

Ochsner moves to dismiss the IIED claim against it pursuant to Fed. R. Civ. P. 12(b)(6). R. Doc. 8-1 at 1.[1] First, Ochsner argues the Complaint's allegations do not constitute "extreme or outrageous" conduct, as required to plead IIED. *Id.* at 6. Second, Ochsner contends that generalized allegations that Rogers suffered humiliation, anxiety, embarrassment, depression, and emotional injury do not rise to the level of severe emotional distress required to state a plausible IIED claim. *Id.* at 7. Finally, Ochsner argues that the Complaint is devoid of factual allegations suggesting that it desired to inflict severe emotional distress on Rogers or that severe emotional distress was substantially likely to result from its actions. *Id.* at 6.

Rogers argues in opposition that the conduct alleged in the Complaint is extreme and outrageous enough to support an IIED claim. R. Doc. 10 at 5–6. Rogers points to allegations that Ochsner reduced her shifts, substituted a younger, less-qualified, African American employee in her place, celebrated her absence in front of her coworkers, pressured her to accept pool shifts, and "intentionally tried to humiliate [her] over a lengthy period of time for the purpose of making her

---

[1] Ochsner also moved to dismiss Rogers's negligence claim under La. Civ. Code art. 2320 and her negligent supervision claim under La. Civ. Code. arts. 2315 and 2316. Rogers agreed to withdraw these claims in her opposition memorandum. R. Doc. 10 at 1.

voluntarily resign." *Id.* at 2–4. Rogers maintains that this conduct is comparable to that in *Wilson v. Monarch Paper Co*., 939 F.2d 1138 (5th Cir. 1991), where the Fifth Circuit upheld a jury's finding of workplace IIED. R. Doc. 10 at 4–5.

In reply, Ochsner paints Rogers's reliance on *Wilson* as misplaced because the case rested on the extraordinary demotion of a corporate executive to janitorial work, and no such extreme or outrageous conduct has been alleged here. *Id.* at 4. Ochsner additionally points to cases applying Louisiana law where allegations of discrimination and public embarrassment similar to Rogers's did not give rise to IIED claims. *Id.* at 4–5 (citing *Nicholas v. Allstate Ins.*, 765 So. 2d 1017 (La. 2000); *White v. Monsanto Co.*, 585 So. 2d 1205 (La. 1991)).

## III. LEGAL STANDARD

Fed. R. Civ. P. 12(b)(6) provides that an action may be dismissed "for failure to state a claim upon which relief can be granted." "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2008)). "Factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 556. A claim is plausible on its face when the plaintiff has pled facts that allow the court to "draw a reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 570. Although a court must liberally construe the complaint in light most favorable to the plaintiff, accept the plaintiff's allegations as true, and draw all reasonable inferences in favor of the plaintiff, *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996), courts "do not accept as true conclusory allegations, unwarranted factual inferences, or legal conclusions." *Arias-Benn v. State Farm Fire & Cas. Co.*, 495 F.3d 228, 230 (5th Cir. 2007) (quoting *Plotkin v. IP Axess Inc.*, 407 F.3d 690, 696 (5th Cir. 2005)).

If a complaint fails to state a plausible claim, a district court should generally grant leave to amend under Fed. R. Civ. P. 15 before dismissing the action. *Carroll v. Fort James Corp.*, 470 F.3d 1171, 1175 (5th Cir. 2006) ("[Rule 15] evinces a bias in favor of granting leave to amend. The policy of the Federal Rules is to permit liberal amendment . . ."). A court may deny leave, however, when amendment would be futile. *Villarreal v. Wells Fargo Bank*, *N.A.*, 814 F.3d 763, 766 (5th Cir. 2016) (explaining that amendment is futile when "the amended complaint would fail to state a claim upon which relief could be granted").

## IV. DISCUSSION

The sole question before the Court is whether Rogers has stated a plausible claim for IIED under Louisiana law. The elements of this claim are "(1) that the conduct of the defendant was extreme and outrageous; (2) that the emotional distress suffered by the plaintiff was severe; and (3) that the defendant desired to inflict severe emotional distress or knew that severe emotional distress would be certain or substantially certain to result from his conduct." *White*, 585 So. 2d at 1209.

### A. Element One: Extreme and Outrageous Conduct

To satisfy the first element of an IIED claim, the conduct alleged "must be so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency. . . ." *Id.* at 1209. "Liability does not extend to mere insults, indignities, threats, annoyances, petty oppressions, and trivialities." *Id.* Nor does a claim for intentional infliction of emotional distress lie in an ordinary employment dispute. *Wilson*, 939 F.2d at 1144. Most workplace conduct, including "demeaning comments, unfair criticism, demotion, termination or other harassment, is not sufficiently 'extreme and outrageous,' however deplorable it may be . . . even where the evidence suggests that those acts are based upon an illegitimate factor such as race, age or disability

and are therefore *illegal.*" *Bird v. Simpson Inv.*, 121 F.3d 705, at *7 (5th Cir. July 15, 1997) (unpublished). IIED claims are instead "limited to situations where the distress is more than a reasonable person could be expected to endure and the offending conduct is intended or calculated to cause severe emotional distress." *Washington v. Mother Works, Inc.*, 197 F. Supp. 2d 569, 572 (E.D. La. 2002).

Two decisions from the Fifth Circuit help illustrate the allegations necessary to state an IIED claim. In the aforementioned *Wilson*, the president of a paper company engaged in a year-long campaign to humiliate, demoralize, and demote his vice president, with the ultimate goal of replacing him with a younger candidate. 939 F.2d at 1139–41. At trial, the jury returned a verdict for the vice president on an IIED claim, which the Fifth Circuit reviewed for sufficiency of the evidence. *Id.* at 1139. The Circuit began by identifying conduct that was insufficient to support an IIED finding: (1) the company assigned the vice president's duties to a younger employee; (2) the president refused to speak to the vice president; (3) the company executed a plan to move younger employees into management positions; (4) other managers refused to work with the vice president; (5) the company reassigned the vice president from his corporate office to a position as a middle manager at company warehouse; and (6) the vice president's colleagues referred to him as old and made signs mocking his age. *Id.* at 1144–45. In the Circuit's view, this conduct, although illegal and discriminatory, fell within the "realm of an ordinary employment dispute," and did not reach the level of outrageousness necessary to find IIED. *Id.* at 1145.

One event, however, stood out. Toward the end of his employ with the company, the vice president was demoted to an entry level warehouse supervisor where his primary duty became janitorial work. *Id.* The vice president was given no employees to supervise and spent his days cleaning up after other employees in the warehouse cafeteria. *Id.* The Circuit found that the

assignment of the vice president—an executive with a college education and thirty years experience—to janitorial duties was extreme and outrageous enough to support the jury's IIED verdict. *Id.*

*Dean v. Ford Motor Credit Co.* followed a similar pattern: the Circuit found allegations that the defendant denied the plaintiff a promotion because of her gender, assigned her additional work and harassed her after she complained about discrimination, and administered additional reviews in order to downgrade her performance rating were insufficient to recover for IIED. 885 F.2d 300, 303–04, 306–07 (5th Cir. 1989). But evidence that a manager framed her for theft by placing company checks in her purse was outrageous enough to support the claim. *Id.* at 307.[2]

Rogers maintains that, like *White* and *Dean*, the allegations in her Complaint are extreme and outrageous enough to support an IIED claim. Rogers relies on the following averments:

1. Ochsner management pressured Rogers's to accept "pool" shifts;
2. Ochsner substituted Rogers for a younger, less qualified, African American nurse;
3. Manager Cutrer celebrated the substitution of Rogers for another nurse in front of Rogers's coworkers;
4. Ochsner falsely advised Rogers that she remained employed by Ochsner while Ochsner had no intention of returning Rogers to a regular work shift;
5. Ochsner reduced Rogers to only nominal earnings, deprived Rogers of work opportunity, and diminished Rogers's morale.

R. Doc. 5 at 20–21. Accepting these allegations as true, the Court finds that Rogers's purported mistreatment was not extreme or outrageous enough to give rise to an IIED claim. Ochsner's alleged conduct is similar in degree to the conduct alleged in *Wilson* and *Dean* that failed to reach the requisite level of outrageousness. The alleged discriminatory removal of Rogers's work shifts embodies an ordinary employment dispute, much like the discriminatory

---

[2] *Wilson* and *Dean* applied Texas law, which like Louisiana, follows the Restatement's conception of IIED. *Deus v. Allstate Ins.*, 15 F.3d 506, 514 (5th Cir. 1994). Because IIED under the jurisprudence of both states is, in all relevant respects, the same, the Fifth Circuit has relied on *Wilson* and *Dean* in analyzing IIED claims under Louisiana law. *Id.* The Court follows the same approach here.

denial of a promotion in *Dean* or the plaintiff's initial demotion to middle management in *Wilson. See Ramirez v. Allright Parking El Paso, Inc*., 970 F.2d 1372, 1376 (5th Cir.1992) (allegations that defendant fired plaintiff because of his age did not establish an IIED claim). The "celebration" of Rogers's absence by Ochsner management, while perhaps in poor taste and discriminatory, is simply not egregious enough to support an IIED claim. *See White*, 585 So. 2d at 1210 (profanity filled outburst by a manager toward employees did not give rise to an IIED claim). The law requires something more: some conduct that exceeds "all possible bounds of decency" and is "utterly intolerable in a civilized community." Rogers's allegations do not rise to that standard.

**B. Element Two: Severe Emotional Distress**

The second element requires the distress suffered to be such "that no reasonable person could be expected to endure it." *Id.* "[T]he mental suffering or anguish [must be] extreme." *Id.* "[S]ymptoms of severe emotional distress include neuroses, psychoses, chronic depression, phobia, and shock," while allegations of "humiliation, anxiety, confusion, upset, worry and the like are typically insufficient." *Gressett v. Sw. Airlines Co*., 216 F. Supp. 3d 743, 749 (E.D. La. 2016) (internal quotation marks omitted). "The intensity and the duration of the distress are factors to be considered in determining [the] severity" of the alleged injuries. Restatement (Second) of Torts § 46 (1965).[3]

Rogers alleges that she suffered "emotional distress, psychiatric injury, depression, . . . anxiety, stress, . . . humiliation, [and] embarrassment." R. Doc. 5 at 21. Rogers provides no details about the intensity or duration of these alleged injuries or other indicators that her suffering exceeded "what a reasonable person could be expected to endure." *McKinney v. Sharp*, No. 25-00080-SDD-RLB, 2026 WL 868598, at *15 (M.D. La. Mar. 30, 2026) (IIED claim dismissed

[3] *Nicholas*, 765 So. 2d at 1021 (Louisiana follows the Restatement's view of IIED).

because plaintiff did not plead facts, "such as visits to health care providers as a result of extreme stress or physical symptoms resulting therefrom, that would allow the [c]ourt to infer she suffered actual severe emotional distress"). These general, undetailed allegations are insufficient to indicate that Rogers's suffering rose level of severity necessary to plead IIED.

**C. Element Three: Intent to Inflict Severe Emotional Distress**

The final element requires that the defendant either desired to inflict severe emotional distress or knew that severe emotional distress was certain or substantially certain to result from their actions. *White*, 585 So. 2d at 1208. The defendant's conduct "must be intended or calculated to cause severe emotional distress and not just some lesser degree of fright, humiliation, embarrassment, worry, or the like." *Id.* at 1210. "Subjective intent can rarely be proven directly." *Taylor v. State*, 617 So. 2d 1198, 1205 (La. Ct. App. 1993), *writ denied*, 620 So. 2d 875 (La. 1993). So, where appropriate, the defendant's intent may be presumed from their engagement in extreme and outrageous conduct. *Id.*

The Complaint alleges that "Ochsner . . . knew or w[as] substantially certain that severe emotional distress would result . . . from [its] conduct." R. Doc. 1 at 21. If Ochsner did engage in extreme or outrageous conduct, a reasonable factfinder could infer that it intended to cause severe emotional distress, or that such distress was substantially certain. *Taylor*, 617 So. 2d at 1205. To the extent that Rogers amends her Complaint to show severe or outrageous conduct, the Court will find this final element satisfied.

**V. CONCLUSION**

Rogers's Complaint fails to adequately plead that Ochsner engaged in extreme and outrageous conduct or that she suffered severe emotional distress as a result. There is no present

indication that amendment would be futile. The Court will therefore allow Rogers to amend her Complaint to the extent that she is to able remedy the deficiencies identified herein. Accordingly;

**IT IS ORDERED** that Defendant's Motion to Dismiss, R. Doc. 8, is hereby **DENIED**. Plaintiff is ordered to **AMEND** her Complaint to state a plausible claim for intentional infliction of emotional distress no later than Wednesday, November 4, 2026. Plaintiff is further ordered to remove causes of action numbered X and XI when amending her Complaint, as she has agreed to withdraw these claims.

New Orleans, Louisiana, this 26th day of October, 2026**.**

Eldon E. Fallon

THE HONORABLE ELDON E. FALLON